FILED
10-25-2016
Washburn County
Clerk of Circuit Court
2016CV000126

**STATE OF WISCONSIN   CIRCUIT COURT   WASHBURN COUNTY** | *For Official Use*

CHRISTINE JENSEN
1204 Paulson Drive, Apt # 105
Spooner, Wisconsin 54801

      Plaintiff,                                    **SUMMONS**

  vs.                                        Case No.:   _____

IMPACT SEVEN, INCORPORATED                 Code No.:   30703
147 Lake Almena Drive
Almena, Wisconsin 54805

    and

GATES LAKE HOUSING DEVELOPMENT CORPORATION
147 Lake Almena Drive
Almena, Wisconsin 54805

      Defendants.

---

## SUMMONS

THE STATE OF WISCONSIN

To each person named above as a Defendant:

    You are hereby notified that the plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

    Within 20 days after receiving this summons, you must respond with a written answer, as that term is used in chapter 802 of the Wisconsin Statutes, to the complaint. The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the court, whose address is Washburn County Courthouse, 10 4th Ave, Shell Lake, WI,

- 1 -



54871 and to Attorneys Kimberly Haas & David Mayer, Jr., plaintiff's attorneys, whose address is Wisconsin Judicare, Inc., 401 N. Fifth Street, Suite 200, P.O. Box 6100, Wausau, WI 54402-6100. You may have an attorney help or represent you.

If you do not provide a proper answer within (20) days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future and also may be enforced by garnishment or seizure of property.

Dated this 25th day of October 2016.

WISCONSIN JUDICARE, INC.

Electronically signed by s/David Mayer, Jr.
David Mayer, Jr.
Attorney for Plaintiff
State Bar # 1089504

Electronically signed by s/Kimberly Haas
Kimberly Haas
Attorney for Plaintiff
State Bar # 1061874

Wisconsin Judicare, Inc.
401 N. Fifth Street, Suite 200
P.O. Box 6100
Wausau, WI 54402-6100
(715) 842-1681
FAX: (715) 848-1885
dmayer@judicare.org
khaas@judicare.org

FILED
10-25-2016
Washburn County
Clerk of Circuit Court
For Official 2016CV000126

**STATE OF WISCONSIN   CIRCUIT COURT   WASHBURN COUNTY**

CHRISTINE JENSEN
1204 Paulson Drive, Apt # 105
Spooner, Wisconsin 54801

      Plaintiff,

    vs.

IMPACT SEVEN, INCORPORATED
147 Lake Almena Drive
Almena, Wisconsin 54805

      and

GATES LAKE HOUSING DEVELOPMENT CORPORATION
147 Lake Almena Drive
Almena, Wisconsin 54805

      Defendants.

**COMPLAINT**

Case No.: _____

Code No.:  30703

---

**COMPLAINT**

---

NOW COMES the Plaintiff, Christine Jensen, by her attorneys, Kimberly Haas & David G. Mayer, Jr., of Wisconsin Judicare, Inc., 401 N. Fifth Street, Suite 200, P.O. Box 6100, Wausau, WI, 54402-6100, and alleges, as follows:

**INTRODUCTION**

1. Plaintiff is a low-income, hearing impaired, disabled individual, who has been diagnosed with a benign brain tumor, who currently resides at her rental unit at Lorraine Glassing Villa (hereinafter,"LGV"), a Section 811 federally subsidized property providing Supportive Housing for Persons with Disabilities, with eight (8) federally subsidized units. LGV is owned by Gates Lake Housing Development Corporation. LGV is managed and operated by Defendant, Impact Seven Incorporated

(hereinafter "Impact Seven").

2.  Section 811 federally subsidized housing was authorized by Section 811 of the
    National Affordable Housing Act of 1990 (P.L. 101-625) as amended by the Housing
    and Community Development Act of 1992 (P.L. 102-550), the Rescission Act (P.L.
    104-19), the American Homeownership and Opportunity Act of 2000 (P.L 106-559),
    and the Frank Melville Supportive Housing Act of 2010 (P.L. 111-374).

3.  Section 811 projects are governed in part by the federal regulations enumerated at 24
    C.F.R. Part 891.

4.  Defendant, Impact Seven, receives on behalf of Defendant, Gates Lake Development
    Corporation, project based rental assistance pursuant to a contract ("PRAC") with the
    Department of Housing and Urban Development authorized by section 811 of the
    National Affordable Housing Act (42 U.S.C. §8013).

5.  Plaintiff has resided at LGV since on or about March 16th, 2015. Plaintiff's current
    monthly tenant contribution based upon her eligibility as a very low-income disabled
    individual is $188 per month.  Plaintiff's original monthly tenant contribution was
    determined to be $254 per month by Defendant Impact Seven acting on behalf of
    Defendant Gates Lake Development Corporation. Plaintiff's monthly tenant
    contribution was incorrectly calculated due to the failure of Defendants to verify and
    include permissible medical expense deductions and assistance animal expenses.
    Plaintiff tenant contribution was incorrected calculated resulting in Plaintiff being
    overcharged for a period of 11 months. Plaintiff was required to submit and re-submit
    documentation regarding her unreimbursed medical expenses and assistance animal
    expenses on numerous occasions.

6.  Plaintiff's original calculated monthly tenant contribution of $254 per month was
    improperly calculated by Defendant, Impact Seven,  contrary to the requirements
    enumerated at 42 U.S.C. §1437a(b)(4)(A)(ii) & 24 C.F.R. §5.611(a)(3). Plaintiff
    contends that Defendants actions were discriminatory on the basis of her disability and

handicap and in violation of the Fair Housing Act enumerated at 42 U.S.C. §3601, *et seq.* and in violation of the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

7.  Plaintiff further contends that Defendant, Impact Seven, acting by and through its employees and agents, have engaged in a pattern or practice of discrimination in violation of the Fair Housing Act enumerated at 42 U.S.C. §3601, *et seq.* as a result of Defendant's standard operating procedure to require the utilization of anticipated medical expenses to determine permissible deductions in rent contrary to the requirements of 24 C.F.R. Part 891, 42 U.S.C. §8013, 42 U.S.C. §1437a(b)(4)(A)(ii) & 24 C.F.R. §5.611(a)(3).

8.  Plaintiff commences this action against the Defendants pursuant to Congress's expressly provided private right of action enumerated at 42 U.S.C. §3613, and within two years of the alleged discriminatory housing practice by the Defendants.  Plaintiff further commences this action pursuant to Congress's expressly provided private right of action enumerated at 29 U.S.C. §794.

9.  Plaintiff is requesting the court award her the remedies enumerated at 42 U.S.C. §3613 and 29 U.S.C. §794a,  including compensatory and punitive damages, declaratory and permanent injunctive relief, costs, disbursements, attorney's fees, and any other relief this court deems appropriate for bringing this action to enforce Plaintiff's statutory rights and enjoin the Defendants from their discriminatory practices.

## JURISDICTION AND VENUE

10. Jurisdiction is proper in the Circuit Court of Washburn County, Wisconsin and is conferred upon this court to pursuant to 42 U.S.C. §3613, 29 U.S.C. §794 and Wis. Stat. §753.03.

11. This court has the authority to grant the requested relief pursuant to 42 U.S.C. §3613, 29 U.S.C. §794 and Wis. Stat. §753.03.

12. Venue is proper in Washburn County, WI, because Defendant, Gates Lake Development Corporation, conducts business and owns the real property that is the subject matter of this suit that is located in Washburn County, WI. Defendant Impact Seven is the managing agent of Gates Lake Housing Development Corporation and administers the Supportive Housing for Persons with Disabilities authorized by section 811 of the National Affordable Housing Act (42 U.S.C. §8013) on behalf of said Defendant in Washburn County. In addition, a substantial part of the events and omissions alleged occurred in Washburn County.

## PARTIES

13. Plaintiff Christine Jensen is a resident of LGV in Washburn County, Wisconsin. Ms. Jensen's household consists of herself and her assistance animal. Plaintiff household is defined as a very-low income household as defined in section 3(b)(2) of the United States Housing Act of 1937, 42 U.S.C. §1437a. Plaintiff is disabled as that term is defined under the Supportive Housing for Persons with Disabilities program authorized by section 811 of the National Affordable Housing Act 42 U.S.C. §8013 (k)(2), as amended. Plaintiff's household is a disabled household as that term is defined in 24 C.F.R. §891.305. Plaintiff is disabled as that term is defined in 29 U.S.C. §705 (20). Plaintiff's apartment unit constitutes a "dwelling" as that term is defined under the Fair Housing Act, 42 U.S.C. §3602(b).

14. Defendant, Gates Lake Housing Development Corporation, is a non-profit organization organized pursuant to Chapter 181 of the Wisconsin Statutes. Defendant Gates Lake Housing Development Corporation's principal office is located at 147 Lake Almena Drive, Almena, WI 54805. Defendant's registered agent is Brett Gerber. At all relevant times, Defendant has owned the LGV, located at 1204 Paulson Drive Spooner, Wisconsin 54801 (the "Subject Property") operated under the Supportive Housing for Persons with Disabilities program authorized by section 811 of the National Affordable Housing Act 42 U.S.C. §8013, as amended, and governed by the

regulations of the United States Department of Housing and Urban Development, including, *without limitation*, 24 C.F.R. §891.  Defendant Gates Lake Housing Development Corporation is the owner of LGV as that term is defined in 24 C.F.R. §891.305.

15. Defendant, Impact Seven, is a non-profit organization organized pursuant to Chapter 181 of the Wisconsin Statutes. Defendant Impact Seven's principal office is located at 147 Lake Almena Drive, Almena, WI 54805. Defendant's registered agent is Brett Gerber.   Defendant, Gates Lake Housing Development Corporation, has contracted and delegated its management duties to Defendant, Impact Seven, with the approval of the Department of Housing and Urban Development, as permitted under 24 C.F.R. §891.400.

## STATUTORY AND REGULATORY BACKGROUND

16. Congress enacted the Supportive Housing for Persons with Disabilities program authorized by section 811 of the National Affordable Housing Act 42 U.S.C. §8013 with *"the purpose...to enable persons with disabilities to live with dignity and independence within their communities by expanding the supply of supportive housing that is designed to accommodate the special needs of such persons; make[ing] available supportive services that address the individual health, mental health, and other needs of such persons; and promot[ing] and facilitat[ing] community integration for people with significant and long-term disabilities. 42 U.S.C. §8013 (a) (1)-(3) (2011).*

17.  With respect to the tenant selection procedures required in 811 housing, *"an owner [here, Gates Lakes Housing Development Corporation] shall adopt written tenant selection procedures that are satisfactory to the Secretary as (i) consistent with the purpose of improving housing opportunities for very low-income persons with disabilities; and (ii) reasonably related to program eligibility and the applicant's ability to perform the obligations of the lease". 42 U.S.C. §8013 (i)(1)(A) (2011). "Occupancy in dwelling units provided assistance under this section shall be available*

*to only to persons with disabilities and household that include a person with a disability."* 42 U.S.C. §8013 (i)(1)(B) (2011).

18. With respect to the selection and admission of tenants under the section 811 program: *"[t]he Owner must accept applications for admission to the projects in the form prescribed by HUD…[a]pplicant households applying the for assisted unit (or residential spaces in a group home) must complete a certification of eligibility as part of the application for admission. Applicant households must meet the disclosure and verification requirements for Social Security Numbers, as provided by 24 CFR part 5, subpart B. Applicant families must sign and submit consent forms for the obtaining of wage and claim information from State Wage Information Collection Agencies, as provided by 24 CFR part 5, subpart B. Both the Owner and the applicant household must complete and sign the application for admission."* 24 C.F.R. §891.410(b) (2016).

19. With respect to the eligibility and selection of tenants: *"[t]he Owner is responsible for determining whether applicants are eligible for admission and for the selection of households. To be eligible for admission, the applicant must be elderly person or a person with disabilities, as applicable (as defined in §§891.205 and 891.305, respectively); must meet the disclosure and verification requirements for Social Security Numbers, as provided by 24 CFR part 5,subpart B; must sign and submit consent forms for the obtaining of wage and claim information from State Wage Information Collection Agencies, as provided by 24 CFR part 5, subpart B; and must be a very low-income family, as defined in §891.105.* 24 C.F.R. §891.410(c)(1) (2016).

20.  Under the section 811 program, a very low income family is defined in 24 C.F.R. §891.105, as: *"very low-income families shall have the same meaning provided in section 3(2)(B) of the United States Housing Act of 1937 (42 U.S.C. §1437a). 24 C.F.R. §981.105 (2016). 42 U.S.C. §1437a 3 (2)(b) defines the term "very low-income families"* as *" low-income families whose incomes do not exceed 50 per centum of the median family income for the area, as determined by the Secretary with adjustments for smaller and larger families, except that the Secretary may establish*

- 8 -

*income ceilings higher or lower than 50 per centum of the median for the area on the basis of the Secretary's findings that such variations are necessary because of unusually high or low family incomes."* 42 U.S.C. §1437a (2011).

21. Under the section 811 program, disability is defined in 24 C.F.R. §891.305 as a *"[p]erson with disabilities shall have the meaning in Section 811 (42 U.S.C. §8013(k) (2)).* 24 C.F.R. §891.305 (2016). 42 U.S.C. §8013(k) (2) defines disability as: *""person with disabilities" means a household composed of one or more persons who is 18 years of age or older and less than 62 years of age, and who has a disability. A person shall be considered to have a disability if such person is determined, pursuant to regulations issued by the Secretary to have a physical, mental, or emotional impairment which (A) is expected to be of long-continued and indefinite duration, (B) substantially impedes his or her ability to live independently, and (C) is of such a nature that such ability could be improved by more suitable housing conditions. A person shall also be considered to have a disability if such person has a developmental disability as defined in section 15002 of this title. The Secretary shall prescribe such regulations as may be necessary to prevent abuses in determining, under the definitions contained in this paragraph, the eligibility of families and persons for admission to and occupancy of housing assisted under this section. Notwithstanding the preceding provisions of this paragraph, the term "person with disabilities" includes two or more persons with disabilities living together, one or more such persons living with another person who is determined (under regulations prescribed by the Secretary) to be important to their care or well-being, and the surviving member or members of any household described in the first sentence of this paragraph who were living, in a unit assisted under this section, with the deceased member of the household at the time of his or her death."* 42 U.S.C. §8013 (k)(2) (2011).

22. When a very low income person is determined to be eligible on the basis their disability, the owner must calculate the tenant's rent contribution in accordance with 42 U.S.C. §8013(d)(3), which provides that *"[a] very low-income person shall pay as*

*rent for a dwelling unit assisted under subsection (b)(2) of this section the higher of the following amounts, rounded to the nearest dollar: (A) 30 percent of the person's adjusted monthly income, (B) 10 percent of the person's monthly income, or (C) if the person is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the person's actual housing costs, is specifically designated by such agency to meet the person's housing costs, the portion of such payments which is so designated; except that the gross income of a person occupying an intermediate care facility assisted under title XIX of the Social Security Act [42 U.S.C.A. § 1396 et seq.] shall be the same amount as if the person were being assisted under title XVI of the Social Security Act [42 U.S.C.A. § 1381 et seq.]."* 42 U.S.C. §8013(d)(3) (2011).

23. To determine a tenant's adjusted monthly income, an owner must determine the tenant's adjusted income *"as defined in part 5, subpart F of subtitle A of this title."* 24 C.F.R. §891.105 (2016). 24 C.F.R. §5.611 defines *"adjusted income" as annual income (as determined by the responsible entity, defined in §5.100 and §5.603) of the members of the family residing or intending to reside in the dwelling unit, after making the following deductions (a) Mandatory deductions. In determining adjusted gross income, the responsible entity **must** deduct the following amounts from annual income: (1) $480 for each dependent; (2) $400 for any elderly family or disabled family; (3) [t]he sum of the following, to the extent of the sum exceeds three percent of annual income: (i) unreimbursed medical expenses of any elderly family or disabled family; and (ii) unreimbursed reasonable attendant care and auxiliary apparatus expenses for each member of the family who is a person with disabilities, to the extent necessary to enable any member of the family (including the member who is a person with disabilities) to be employed."* 24 C.F.R. §5.611 (a) (1)-(3) (2016). Under the section 811 program, additional deductions are permitted in accordance with 24 C.F.R. §5.611, *"for the HUD programs listed in §5.601(d), the responsible entity **shall calculate such other deductions as required and permitted by the applicable program regulations."*** 24 C.F.R. §5.611 (b) (2016) (emphasis added).

24.  Owners who are responsible for income calculations must verify the accuracy of income information received from a family. 24 C.F.R. §5.240 (2016). Owners are also responsible for changing the amount of the tenant's rent as appropriate. *Id.* An owner must attempt to obtain and document third party verification or document why third party verification was not available for, among other things, medical expenses. 24 C.F.R. §5.659(d)(3) (2016).

25.  An owner is responsible for all management functions including admission eligibility, and rent calculations at move in or during any recertification. 24 C.F.R. §§891.410 (2016), 24 C.F.R. 5.611(a) (2016). Owners are required to make admission selections in a nondiscriminatory manner without regard to disability. 24 C.F.R. §891.410 (c)(2)(ii) (2016).

26.  The Department of Housing and Urban Development publishes the HUD Occupancy Handbook to describe the occupancy requirements and procedures governing the HUD-subsidized multifamily housing program, including the section 811 program with project rental assistance contracts (PRAC).  Chapter 5 of the Guidebook, entitled, Determining Income and Calculating Rent, in Section 5-10, Section D,  provides guidance on properly calculating the Medical Expense Deduction contemplated under 24 C.F.R. §5.611(a)(3). Section D states, *in part*, as follows:

> 1.  *The medical expense deduction is permitted only for families in which the head, spouse, or co-head is at least 62 years old or is a person with disabilities (elderly or disabled families);*

> 2.  *If the family is eligible for a medical expense deduction,* **owners must include the unreimbursed medical expenses** *of all family members, including the expenses of non-elderly adults or children living in the family;*

> 3.  *Medical expenses include all expenses the family anticipates to incur in the 12 months following* **certification/***recertification that are not*

- 11 -

*reimbursed by an outside source, such as insurance.*

4.  *The owner may use the ongoing expenses the family paid in the 12 months preceding the **certification/**recertification to estimate anticipated medical expenses.*

5.  *The medical expense deduction is that portion of total medical expenses that exceeds 3% of annual income.*

6.  *In addition to anticipated expenses, past one-time nonrecurring medical expenses that have been paid in full may be included in the calculation of the medical expense deduction for current tenants at an **initial,** interim or annual recertification. Past one-time non-recurring medical expenses that have been paid in full are not applicable when calculating anticipated medical expenses at move-in. If the tenant is under a payment plan, the expense would be counted as anticipated.*

    a.  *There are two options for addressing one-time medical expenses. These expenses may be added to the family's total medical expenses either: (1) at the time the expense occurs, through an interim recertification, or (2) at the upcoming annual recertification.*

7.  *When a family is making regular payments over time on a bill for a past one-time medical expense, those payments are included in anticipated medical expenses. However, if a family has received a deduction for the full amount of a medical bill it is paying over time, the family cannot continue to count that bill even if the bill has not yet been paid.*

8.  *Not all elderly or disabled applicants or participants are aware that their unreimbursed expenses for medical care are included in the*

*calculation of adjusted income for elderly or disabled families. **For that reason, it is important for owners to ask enough questions to obtain complete information about allowable medical expenses.** The following list highlights some of the most common expenses that may be deducted. A list of examples of eligible medical expenses may be found in Exhibit 5-3. a. Services of doctors and health care professionals; b. Services of health care facilities; c. Medical insurance premiums or costs of an HMO; d. Prescription/nonprescription medicines that have been prescribed by a physician; e. Transportation to treatment; f. Dental expenses; g. Eyeglasses, hearing aids, batteries; h. Live-in or periodic medical assistance such as nursing services, or **costs for an assistance animal and its upkeep;** i. Monthly payments on accumulated medical bills; j. Medical care of a permanently institutionalized family member if his or her income is included in annual income; and Section 2: Determining Adjusted Income HUD Occupancy Handbook 5-50 6/07 Chapter 5: Determining Income & Calculating Rent 4350.3 REV-1 k. Long-term care insurance premiums. The family member paying a long-term care insurance premium must sign a certification (see Sample Certification for Qualified Long-Term Care Insurance Expenses in Exhibit 5-4) that states the insurance is guaranteed renewable, does not provide a cash surrender value, will not cover expenses covered under Medicare, and restricts the use of refunds. The certification must be maintained in the family's occupancy file. (Paragraph 5-6 L.3 describes situations in which long-term care insurance payments must be included in annual income.)* HUD Occupancy Handbook, Ch. 5, pgs. 5-46- 5-51 (2013).

27.   Congress has stated that *"[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States."* 42 U.S.C. §3601 (1968).

28.  The Fair Housing Act, defines a "dwelling" as *"any building structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families…"* 42 U.S.C. §3602 (b) (2016). The Fair Housing Act defines a "discriminatory housing practice" as *"an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title."* 42 U.S.C. §3602 (b) (2016). The Fair Housing Act further defines the term "handicap" to mean, with respect to a person— *"(1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment, or (3) being regarded as having such an impairment, but such term does not include current, illegal use of or additional to a controlled substance (as defined in section 802 of Title 21).* 42 U.S.C. §3602 (h) (2016). Under the Fair Housing Act, an "aggrieved person" includes any person who— *"claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur."* 42 U.S.C. §3602 (i) (2016).

29.  Under the Fair Housing Act, is it unlawful: *"to discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of handicap of—(A) that buyer or renter; (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter"* 42 U.S.C. §3604(f)(1) (2016).

30. Under the Fair Housing Act, it is also unlawful *"to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the connection with such dwelling, because of handicap of--- (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person."* 42 U.S.C. §3604(f)(2) (2016).

31. Under the Fair Housing Act, it is also unlawful to *"to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603,*

- 14 -

*3604, 3605, or 3606 of this title."* 42 U.S.C. §3617 (2016).

32.  Enforcement of the Fair Housing Act is permissible by private parties regardless of whether or not they have exhausted all administrative remedies. Pursuant to 42 U.S.C. §3613, *"An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach."* 42 U.S.C. §3613 (a)(1)(A) (2016).

33. In a civil action commenced by a private party to enforce the Fair Housing Act, "*if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d) of this section, may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).*" 42 U.S.C. §3613 (c)(1) (2016).   In addition, *"the court, in its discretion, may allow the prevailing party, other than the United States, reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person."* 42 U.S.C. §3613 (c)(2) (2016).

34. Section 504 of the Rehabilitation Act of 1973, Section 794 provides that: "*No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any*

*proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees."* 29 U.S.C. §794 (2016).

35. Under Section 504 of the Rehabilitation Act of 1973, an individual is disabled, if they met the definition of disabled stated in 29 U.S.C. §705 (20), which provides: *"Except as otherwise provided in subparagraph (B), the term "individual with a disability" means any individual who--(i) has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; and (ii) can benefit in terms of an employment outcome from vocational rehabilitation services provided pursuant to subchapter I, III, or VI of this chapter [29 U.S.C.A. § 720 et seq., 771 et seq., or 795 et seq.]."* 29 U.S.C. §705(20) (A) (2016).

36. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a) states the remedies available for violations of the act. 29 U.S.C. §794(a) states: *"(a)(1) The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of sections 706(f) through 706(k)(42 U.S.C. 2000e-5(f) through (k)) (and the application of section 706(e)(3) (42 U.S.C. 2000e-5(e)(3)) to claims of discrimination in compensation), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy. (2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.(b) In any action or proceeding to enforce or charge a violation of a provision of*

*this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."* 29 U.S.C. §794a (2016).

## FACTUAL ALLEGATIONS

37. On or about January 10th, 2015, Plaintiff accessed an application to reside at LGV from Defendant Impact Seven's website.

38.  On or about January 10th, 2015, Plaintiff mailed her application to Defendant Impact Seven to reside at LGV, or in the alternative, to be placed on the waiting list for an available unit at LGV.

39. On or about January 10th, 2015, and at all times material hereto, Defendant Impact Seven's application to reside at LGV has stated in Part 2, Section 7:

> 7. MEDICAL EXPENSES (Elderly, Handicapped, or Disabled Families Only) - Include total anticipated medical expenses to be incurred over next twelve-month period *not covered by insurance*. May include expenses for: dental; prescription medicines; medical insurance premiums; eyeglasses; hearing aids/batteries; cost of live-in resident assistant; monthly payments required on accumulated major medical bills including that portion of spouse's or child's nursing home paid from tenant family income(s). (Include names, phone # & addresses of source)

40. On or about February 2nd, 2015, Defendant, Impact Seven, acting by and through its employee, Denise Ramsos, contacted Plaintiff regarding her application and requested information regarding when Plaintiff wanted to move to LGV.

41. On or about February 3rd, 2015, Plaintiff met with a representative of Defendant, Impact Seven, to view available units.

42. On or about February 3rd, 2015, Plaintiff indicated her interest in residing in an available unit at LGV to Defendant Impact Seven, acting by and through its employee, Denise Ramsos.

43. On or about February 4th, 2015, Defendant Impact Seven, acting by and through its

employee, Denise Ramsos, sent or caused to be sent verification forms to the Plaintiff, which included an attachment of said verification forms constituting 21 pages.

44. On or about February 4th, 2015, Plaintiff provided by electronic communication a Microsoft Excel Spreadsheet detailing a partial listing of her prior year unreimbursed medical expenses to Defendant Impact Seven.

45. On or about February 4th, 2015, Plaintiff, by electronic communication, communicated with Denise Ramsos, Assisted Housing Manager, for Defendant, Impact Seven, and inquired whether or not rent is determined in accordance with prior year receipts for medical expenses.

46. On or about February 4th, 2015, Denise Ramsos, Assisted Housing Manager, for Defendant Impact Seven, responded to Plaintiff, by electronic communication, stating:" *"When moving into a property, it is Federal Regulations to use **anticipated** medical expenses. Therefore, mileage and expense for Duke will have to be kept track of (keep your receipts & keep track of the dates of medical appts & where) and turned in next year at recertification time."*

47. On or about February 9th, 2015, Plaintiff obtained an estimate of her anticipated annual veterinary expenses from the Spooner Veterinary Clinic and Care Animal Clinic. The estimate reflected an annual cost of a Canine Vaccination Package and Parasite Profile at a cost of $150.09.

48. On or about February 9th, 2015, Plaintiff met with Denise Ramsos, Assisted Housing Manager, for Defendant Impact Seven, and Greta Lotton, Assisted Housing Manager, for Impact Seven, at Defendant's principal place of business and provided Defendant additional documentation regarding her prior year unreimbursed medical expenses and assistance animal expenses.  Defendant, Impact Seven, acting by and through its employees, Denise Ramsos and Greta Lotton, denied Plaintiff the ability to provide additional documentation regarding her medical expenses and assistance animal expenses.

49. On or about February 9th, 2015, Plaintiff was informed by Denise Ramsos, Assisted Housing Manager, and Greta Lotton, Assisted Housing Manager, for Defendant Impact Seven, that Plaintiff would only be permitted to utilize medical expenses that could be verified by third party verification.

50. On or about March 16th, 2015, Plaintiff executed a lease agreement and other documentation with Defendant, Impact Seven, to reside at LGV in apartment unit #105, commencing on March 16th, 2015, with a stated monthly tenant rent contribution of $254 dollars per month.

51. On or about March 16th, 2015, Denise Ramsos, Assisted Housing Manager, for Defendant Impact Seven, prepared or caused to be prepared HUD Form-50059, Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures, on behalf of Defendant Gates Lake Housing Development Corporation, in reference to Plaintiff's tenancy at LGV.

52. On March 16th, 2015, Denise Ramsos, Assisting Housing Manager, for Defendant Impact Seven, signed HUD Form-50059, certifying that Plaintiff's eligibility, rent, and assistance payments have been computed in accordance with HUD's regulations and administrative procedures and that all required verifications were obtained.

53. On HUD Form-50059, prepared by Denise Ramsos, Assisting Housing Manager, for Defendant Impact Seven, on March 16th, 2015, Plaintiff's allowable medical monthly medical expenses were calculated to be $52.

54. On or about March 16th, 2015, Defendant Impact Seven, acting by and through its employee, Denise Ramsos, failed to properly document or inform Plaintiff that Defendants were unable through third-party verification to document Plaintiff's medical expenses.

55. On or about April 28th, 2015, Plaintiff filed with the U.S. Department of Housing and Urban Development alleging that Defendant, Impact Seven, discriminated against

Plaintiff on the basis of her disability by refusing to utilize her unreimbursed medical and assistance animal-expenses to reduce her initial monthly rent under Section 504 of the Rehabilitation Act of 1973 (Section 504: 05-15-0007-04).

56.  On or about June 22nd, 2015, Denise Ramsos, Assisted Living Manager, for Defendant Impact Seven, contacted Plaintiff regarding communication she had received from the U.S. Department of Housing and Urban Development in regard to the medical expenses she did not use when calculating Plaintiff's rent and move-in. In Ms. Ramsos's communication, she admits she is unsure of what should be counted and will be contacting the U.S. Department of Housing and Urban Development and would inform Plaintiff of any change.

57. On or about July 14th, 2015, Plaintiff contacted Mike DeWard, supervisor of Denise Ramos, Assisted Living Manager, for Defendant Impact Seven. Mr. DeWard advised by electronic communication that once Plaintiff had filed a case with HUD he had advised Denise not to further discuss the situation with Plaintiff until they had the change to consult their attorney or actually talk to HUD. Mike DeWard further stated that he would make every effort possible to see that Plaintiff's paperwork is completed as soon as possible.

58. On or about July 14th, 2015, Plaintiff received electronic communication from Denise Ramsos, Assisted Living Manager, for Defendant Impact Seven, stating that she would be adding in the expenses Plaintiff referenced and will be getting information to the Plaintiff by the end of the week.

59.  On or about July 16th, 2015, Plaintiff was contacted by Jerome Van Epps, a representative with HUD's Fair Housing Office in Milwaukee regarding the Section 504 Complaint she had filed against Defendant Impact 7. Mr. Epps advised he was working with Paul Duhr, HUD's Site Representative with the multi-family division of Plaintiff's apartment building, in reference to Plaintiff's Section 504 complaint.

60. Subsequent to Mr. Van Epps communication on or about July 16th, 2015, Plaintiff, executed and submitted additional releases for Defendant Impact 7 to obtain her prior

year medical expense. Plaintiff submitted additional documentation to Mr. Duhr, Ms. Ramsos, and Ms. Lotton on numerous occasions to establish her entitlement to a deduction for unreimbursed medical expenses in excess of three percent of Plaintiff's annual income from her monthly tenant contribution, as permitted by section 811 program requirements.

61. Subsequent to Mr. Van Epps communication on or about July 16th, 2015, Defendant, Impact Seven, acting through and by its employee, Denise Ramsos, made a false statement of fact to Mr. Van Epps and Mr. Duhr that she has included in her February 4th, 2015, documentation emailed and scanned to Plaintiff, a copy of Exhibit 5-3 from the HUD Handbook 4350.3.

62. On or about December 10th, 2015, Paul Duhr, Site Representative with the multi-family division of Plaintiff's apartment building contacted Plaintiff's counsel and Defendant Impact Seven's agent, Denise Romsos, attaching a two documents; one entitled Jensen Monthly Expenses & Summary Write-up 2015.docx and Jensen Monthly Expenses Summary 2015.xlsx.

63. On or about December 10th, 2015, Paul Duhr, Site Representative with the multi-family division of Plaintiff's apartment building, indicated that Defendant Impact Seven, acting by and though its employee, Ms. Ramsos, had recalculated Plaintiff's allowable unreimbursed medical deductions, and determined that Plaintiff had established she was entitled on the basis of her documented expenses for the six month period of April 2015-September 2015, allowable annual medical expenses of $2,902.42, or $241.87 per month. As a result, Defendant Impact Seven, acting by and through its employee Ms. Ramsos, informed Plaintiff that her recalculated monthly tenant contribution was $190 and that the re-calculation was being made retroactive to her move in date of March 16th, 2016, entitling Plaintiff to a refund of her overpayment of her monthly tenant contribution in the amount of $667.

64. On or about December 14th, 2016, Defendant Impact Seven, acting by and through its employee, Denise Ramsos, sent a letter to Plaintiff, entitled CORRECTED MOVE-IN

CERTIFICATION: Correcting Medical Expenses, indicating her monthly tenant contribution has been adjusted to $190 and security deposit adjusted to $222. The letter advised Plaintiff she was entitled to a $667 reimbursement. Enclosed with the letter was HUD Form 50059 Tenant Certification and copy of Plaintiff's Revised Residential Lease.

65. Defendant Impact Seven's December 14th, 2015 communication to Plaintiff indicated that under the terms and provisions of Plaintiff's lease agreement, failure to promptly provide current and accurate certification information would require Plaintiff to pay market rent. Defendant requested that Plaintiff sign all copies of the forms where indicated and return them prior to December 28th, 2015.

66. On or about December 17th, 2015, Plaintiff, acting by and through counsel, objected to the Defendant Impact Seven's calculation of her allowable medical deductions on the basis that the spreadsheet prepared by Ms. Ramsos contained mathematical errors and failed to properly include all of Plaintiff's allowable medical expenses as permitted by federal regulations.

67. On or about January 7th, 2016, Paul Duhr, Site Representative with the multi-family division of Plaintiff's apartment building, contacted Plaintiff's counsel and indicated that after communication with Defendant, Impact Seven, acting by and through its employee, Denise Ramsos, that the December 10th, 2015, calculation of Plaintiff's allowable medical expense deduction, including assistance animal expenses, was incorrectly calculated due to software glitches resulting in mathematical errors in calculating two out of six months of Plaintiff's allowable medical expenses and for failure to include properly deductible medical expenses.

68. On or about January 14th, 2016, Paul Duhr, Site Representative with the multi-family division of Plaintiff's apartment building, contacted Plaintiff's counsel enclosing a Microsoft Excel Spreadsheet the corrected the prior mathematical errors of Defendant Impact Seven and included additional allowable medical expenses, including assistance animal expenses. Based upon the corrected calculation, Plaintiff's monthly

- 22 -

tenant contribution was determined to be $188 and her allowable annual medical expense deduction was calculated to be $3,011.42.

69.  On or about January 26th, 2016, a Letter of Findings (LOF) was issued by the U.S. Department of Housing and Urban Development regarding Plaintiff's complaint under Section 504 of the Rehabilitation Act of 1973 (Section 504: 05-15-0007-04).

70. On or about February 1st, 2016, Defendant Impact Seven, acting though Denise Ramsos, sent or caused to be sent a letter to Plaintiff, entitled CORRECTED MOVE-IN CERTIFICATION: Correcting Medical Expenses, indicating her monthly tenant contribution has been adjusted to $188 and her security deposit was adjusted to $220. The letter advised Plaintiff she was entitled to a $760 reimbursement from Defendant Impact Seven. Enclosed with the letter was HUD Form 50059 Tenant Certification and copy of Plaintiff's Revised Residential Lease.

71. Defendant Impact Seven's February 1st, 2016 communication to Plaintiff indicated that under the terms and provisions of Plaintiff's lease agreement, failure to promptly provide current and accurate certification information would require Plaintiff to pay market rent. Defendant requested that Plaintiff sign all copies of the forms where indicated and return them prior to February 15th, 2016.

72.  On or about February 15th, 2016, Plaintiff filed an request of review of the Letter of Findings (LOF) of her complaint under Section 504 of the Rehabilitation Act of 1973 (Section 504: 05-15-0007-04).

73. On or about February 17th, 2016, Plaintiff received a check from Defendant Impact Seven in the amount of $532 dollars.

74.  On or about June 10th, 2016, the U.S. Department of Housing and Urban Development, sustained their determination under the information in the evidentiary record supported the finding that, with respect to the assistance animal expenses, that Defendant Impact Seven had complied with Section 504 and HUD program requirements, as without verification of expenses, Plaintiff did not qualify for the

deduction.

## CAUSES OF ACTION

## FAIR HOUSING ACT VIOLATIONS

75.  Plaintiff reasserts the allegations set forth in paragraphs above as if fully set forth herein.

76.  The Defendants, through the actions described above, have violated the Fair Housing Act by:

    a.  Discriminating in the rental, or to otherwise making unavailable or to deny, a dwelling to the Plaintiff on the basis of her handicap, in violation of 42 U.S.C. §3604(f)(1)(A) by making unavailable to her a unit meeting  the  program requirements of the Supportive Housing for Persons with Disabilities program authorized by section 811 of the National Affordable Housing Act 42 U.S.C. §8013, as amended, by representing that only anticipated medical expenses were permissible expenses in the determination of her monthly tenant contribution and date of her move-in and initial tenant certification;

    b.  Engaging in a pattern, practice, and standard operating procedure of discrimination in the rental, or otherwise making unavailable or to deny, a dwelling to the Plaintiff on the basis of her handicap, in violation of 42 U.S.C. §3604(f)(1)(A) by representing to Plaintiff and making unavailable to her a unit meeting the  program requirements of the Supportive Housing for Persons with Disabilities program authorized by section 811 of the National Affordable Housing Act 42 U.S.C. §8013, as amended, by representing that only anticipated medical expenses were permissible in the determination of her monthly tenant contribution on the date of her move-in and initial tenant certification;

    c.  Discriminating against the Plaintiff in the terms, conditions, in the rental of

dwelling on the basis of Plaintiff's handicap, in violation of 42 U.S.C. §3604 (f)(2) by representing to Plaintiff that only anticipated medical expenses were permitted at the time of initial certification and move in; by representing to the Plaintiff that she would only be permitted to utilize unreimbursed medical expenses at the time of her next lease agreement and certification; by failing to perform its duty to verify Plaintiff's medical expenses and permit mandatory deductions under the mandatory program requirements under the Supportive Housing for Persons with Disabilities program authorized by section 811 of the National Affordable Housing Act 42 U.S.C. §8013, as amended; by making false representations to Plaintiff and by Defendants employees willful conduct to conceal Defendants' representations; and by failing to properly calculate Plaintiff's mandatory deductions;

d.   Engaging in a pattern, practice, and standard operating procedure of discrimination against the Plaintiff in the terms, conditions, in the rental of a dwelling on the basis of Plaintiff's handicap, in violation of 42 U.S.C. §3604 (f)(2) by representing to Plaintiff that only anticipated medical expenses were permitted at the time of initial certification and move in; by representing to the Plaintiff that she would only be permitted to utilize unreimbursed medical expenses at the time of her next lease agreement and certification; by failing to perform its duty to verify Plaintiff's medical expenses and permit mandatory deductions under the mandatory program requirements under the  Supportive Housing for Persons with Disabilities program authorized by section 811 of the National Affordable Housing Act 42 U.S.C. §8013, as amended; by making false representations to Plaintiff and by Defendants employees conduct to conceal Defendants' representations; and by failing to properly calculate Plaintiff's mandatory deductions;

e.   Unlawfully attempting to coerce, intimidate, threaten, or interfere with Plaintiff, in violation of 42 U.S.C. §3617,by the Defendants, after the Plaintiff had exercised her rights under the Fair Housing Act, by  representing to the Plaintiff on multiple occasions that if Plaintiff did not sign and agree to

Defendants' calculation of her monthly tenant contribution and return to Defendant HUD Form 50059 that Defendants' would raise Plaintiff's rent to market rate when the Defendants knew or should have known such calculations were incorrect and in dispute, and by making false representations to representatives of the Department of Housing and Urban Development in regard to the information Defendant had provided Plaintiff prior to her initial move in.

77. Plaintiff, as a result of Defendants' Fair Housing Act violations has suffered damages as a result of Defendants' conduct. Plaintiff is an "aggrieved person" within the meaning of 42 U.S.C. §3602(i).

78. The discriminatory actions of the Defendants were intentional, willful, malicious, wanton, reckless and taken in disregard of the federally-protected rights of Plaintiff.

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

79. The Defendants, through the actions described above, have violated Section 504 of the Rehabilitation Act of 1973 by:

   a. Discriminating, and denying, the Plaintiff equality of benefits and opportunity for the permissible benefits of a program receiving Federal Financial assistance on the basis of her disability, in violation of the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, by representing to Plaintiff that only anticipated medical expenses were permitted at the time of initial certification and move in; by representing to the Plaintiff that she would only be permitted to utilize unreimbursed medical expenses at the time of her next lease agreement and certification; by failing to perform its duty to verify Plaintiff's medical expenses and assistance animal expenses and permit mandatory deductions under the mandatory program requirements under the

- 26 -

Supportive Housing for Persons with Disabilities program authorized by section 811 of the National Affordable Housing Act 42 U.S.C. §8013, as amended; by making false representations to Plaintiff and by Defendants employees conduct to conceal Defendants' representations; and by failing to properly calculate Plaintiff's mandatory deductions;

80. Plaintiff, as a result of Defendants' Section 504 Rehabilitation Act of 1973 violations has suffered damages as a result of Defendants' conduct.

81. The discriminatory actions of the Defendants were intentional, willful, malicious, wanton, reckless and taken in disregard of the federally-protected rights of Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Christine Jensen, respectfully requests that this Court enter judgment in Plaintiff's favor and award the following relief:

1.   Declaring that the discriminatory conduct of the Defendants set forth above violates the Fair Housing Act, as amended, 42 U.S.C. §§3601-3619;

2.   Declaring that the discriminatory conduct of the Defendants set forth above violates Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794;

3.   Declaring that the discriminatory conduct of the Defendants set forth above establishes a pattern or practice of discrimination as a result of their policy to only utilize anticipated medical expenses contrary to the requirements of 24 C.F.R. Part 891, 42 U.S.C. §8013, 42 U.S.C. §1437a(b)(4)(A)(ii) & 24 C.F.R. §5.611(a)(3) in violation of the Fair Housing Act, as amended, 42 U.S.C. §§3601-3619 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

4.  Declaring that the discriminatory actions of the Defendants were intentional, willful,

and taken in disregard of the federally protected rights of the Plaintiff;

5.  Enjoining the defendants, their agents, employees, successors, and all other persons in active concert or participation with any of them from:

   a.  Discriminating in the sale or rental, or otherwise making unavailable or denying, a dwelling to any buyer or renter because of disability, in violation of 42 U.S.C. §3604(f)(1);

   b.  Discriminating against any person in the terms, conditions, or privileges of a sale or rental of a dwelling, or in the provisions of services or facilities in connection with such dwelling, because of disability, in violation of 42 U.S.C. §3604(f)(2);

   c.  Unlawfully, coercing, intimidating, or interfering with any person in the exercise and enjoyment of any right granted or protected by §3603, §3604, §3605, or §3606 of the Fair Housing Act, as amended, in violation of 42 U.S.C. §3617.

   d.  Discriminating and denying the Plaintiff the equal benefits and opportunity for permissible benefits of a program receiving Federal Financial assistance on the basis of her disability, in violation of the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794;

6.  Requiring defendants to take such actions as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of their unlawful conduct, including implementing policies and procedures to ensure that no applicants or residents are discriminated against because of their disability;

7.  Awarding monetary damages to Plaintiff, including compensatory and punitive damages, pursuant to 42 U.S.C. §3613(c)(1);

8. Awarding monetary damages and other relief to the Plaintiff pursuant to 29 U.S.C. §794a;

9. Awarding to the Plaintiff costs, disbursements, and attorney's fees for bringing this action to enforce Plaintiff's statutory rights; and

10. Awarding the Plaintiff such other relief as this Court deems just and proper.

Respectfully submitted this 25th day of October 2016.

WISCONSIN JUDICARE, INC.


Electronically signed by s/David Mayer, Jr.
David Mayer, Jr.
Attorney for Plaintiff
State Bar # 1089504


Electronically signed by s/Kimberly Haas
Kimberly Haas
Attorney for Plaintiff
State Bar # 1061874


Wisconsin Judicare, Inc.
401 N. Fifth Street, Suite 200
P.O. Box 6100
Wausau, WI  54402-6100
(715) 842-1681
Fax:  (715) 848-1885
dmayer@judicare.org
khaas@judicar.org

# CERTIFICATE OF SERVICE

BARRON COUNTY SHERIFF'S DEPARTMENT • 1420 STATE HWY 25 NORTH RM 1200, BARRON, WI 54812-3007 • (715) 537-5814

## IN THE WISCONSIN CIRCUIT COURT FOR WASHBURN COUNTY

FILED
11-01-2016
Washburn County
Clerk of Circuit Court

| STATE OF WISCONSIN | ) | | |
| | ) | SS | |
| BARRON COUNTY | ) | | |

| | |
|---|---|
| Docket No | 20161199 |
| Court No | 16CV126 |
| Reference No | |
| Received | 10/27/2016 |

PLAINTIFF : CHRISTINE A JENSEN

vs.

DEFENDANT : GATES LAKE HOUSING DEVELOPMENT CORP

| SUMMONS AND COMPLAINT |
|---|

### SERVED PARTY

| Name | GATES LAKE HOUSING DEVELOPMENT CORP | Party Type | DEFENDANT |
|---|---|---|---|

Address | 147 LAKE ALMENA DR, ALMENA, WI, 54805

### SERVICE INFORMATION

Document(s)
Summons & Complaint

Type of Service  PERSONAL                          Status  SERVED

By Serving  VP OF PROPERTY MGMT MICHAEL R DEWERD

Location  147 LAKE ALMENA DR, ALMENA, WI 54805
Comments

| | Date | Time | Officer | Mileage | Minutes | Notes |
|---|---|---|---|---|---|---|
| Service ▶ | 10/27/2016 | 12:15 | 323 • Curtis Arnold | | | |
| | | Total Mileage / Minutes | | 0 | 0 | |

I certify above information to be true and correct. Chris D. Fitzgerald, Sheriff, Barron County, Wisconsin

_Curtis L. Arnold_

Deputy Sheriff or Designee                                           Date

# CERTIFICATE OF SERVICE

BARRON COUNTY SHERIFF'S DEPARTMENT • 1420 STATE HWY 25 NORTH RM 1200, BARRON, WI 54812-3007 • (715) 537-5814

FILED
11-01-2016
Washburn County
Clerk of Circuit Court

## IN THE WISCONSIN CIRCUIT COURT FOR WASHBURN COUNTY

| STATE OF WISCONSIN | ) | | |
|---|---|---|---|
| | ) SS | Docket No | 20161199 |
| BARRON COUNTY | ) | Court No | 16CV126 |
| | | Reference No | |
| | | Received | 10/27/2016 |

PLAINTIFF : CHRISTINE A JENSEN

vs.

DEFENDANT : GATES LAKE HOUSING DEVELOPMENT CORP

| SUMMONS AND COMPLAINT |
|---|

| SERVED PARTY | | | |
|---|---|---|---|
| Name | GATES LAKE HOUSING DEVELOPMENT CORP | Party Type | DEFENDANT |
| Address | 147 LAKE ALMENA DR, ALMENA, WI, 54805 | | |

| SERVICE INFORMATION | | | |
|---|---|---|---|
| Document(s) | Summons & Complaint | | |
| Type of Service | PERSONAL | Status | SERVED |
| By Serving | VP OF PROPERTY MGMT MICHAEL R DEWERD | | |
| Location | 147 LAKE ALMENA DR, ALMENA, WI 54805 | | |
| Comments | | | |

| | Date | Time | Officer | Mileage | Minutes | Notes |
|---|---|---|---|---|---|---|
| Service ▶ | 10/27/2016 | 12:15 | 323 • Curtis Arnold | | | |
| | | | Total Mileage / Minutes | 0 | 0 | |

I certify above information to be true and correct. Chris D. Fitzgerald, Sheriff, Barron County, Wisconsin

*Curtis L. Arnold*

Deputy Sheriff or Designee                                    Date